UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Diheim Young,

       Plaintiff,

       v.                    Civil Action No. 2:16-cv-143-wks-jmc

Department of Corrections,
Medical Staff, Correction Officers, and
Northwest State Correctional Facility,

       Defendants.

## REPORT AND RECOMMENDATION
(Doc. 5)

Plaintiff Diheim Young, proceeding *pro se*, brings this action pursuant to the
Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671–2680, for monetary damages against
the "Department of Corrections, Medical Staff, Correction Officer[]s," and Northwest
State Correctional Facility (NWSCF).[1]  (Doc. 4 at 1.)  Young alleges that his rights were
violated at NWSCF.  (*Id.* at 4.)  Specifically, he asserts that as a pretrial detainee, officers
"forgot [he] was in the cell," and he "rec[ei]ved inadequate dental care while in prison."
(*Id.*)  He also appears to be asserting that he was retaliated against for grieving his
situation.  (*Id.*)

---

[1] In his "Request for Relief," Young also asks that the Court "investigate the matter."  (Doc. 4 at
6.)  This relief cannot be granted.  *See McNeil v. Wisconsin*, 501 U.S. 171, 181 n.2 (1991) ("What makes
a system adversarial rather than inquisitorial is . . . the presence of a judge who does not (as an inquisitor
does) conduct the factual and legal investigation himself, but instead decides on the basis of facts and
arguments pro and con adduced by the parties.").

Now pending before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 5.)  Young has not filed a Response to the Motion.

For the reasons that follow, I recommend that the Court GRANT Defendants' Motion to Dismiss (Doc. 5).

## **Background**

For purposes of deciding Defendants' Motion to Dismiss, the Court accepts as true the factual allegations contained in the Complaint, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and views those facts "'in the light most favorable'" to Young, *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 148 (2d Cir. 2010)).

The Complaint's allegations are minimal.  It appears that Young is—or was at one point during the relevant time period—a pretrial detainee at NWSCF.  (Doc. 4 at 4.)  On March 27, 2015, while a pretrial detainee, he received "inadequate dental care."  (*Id.*) His care was inadequate because officers forgot him in his cell, thus denying him "medical attention."  (*Id.* at 7.)  He also alleges that he tried to grieve his situation to the officers "on the Housing Unit," but the result was as follows: they told Young "that they 'forgot [he] was in the cell'" (*id.* at 4), and Young "ended up getting restrain[ed] and escorted to solitary confi[ne]ment."  (*Id.*)

The Complaint alleges both that he did not use the prisoner grievance procedure (*id.* at 3), but also that he "wrote several letters exhausting [his] administrative remedies and [hasn't] received any responses at all" (*id.* at 4).

<u>Analysis</u>

## I.      Federal Rule of Civil Procedure 12(b)(6)

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678); *see also* Fed. R. Civ. P. 8(a)(2).  Also, on a 12(b)(6) motion, "the Court may consider documents attached as an exhibit [to the complaint] or incorporated by reference, documents that are 'integral' to plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken." *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Although plausibility is not a 'probability requirement,' [p]laintiffs must allege facts that permit 'more than a sheer possibility that a defendant has acted unlawfully.'" *Turkmen v. Hasty*, 789 F.3d 218, 233 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

Two principles guide a plausibility determination. *See Iqbal*, 556 U.S. at 678. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "[T]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Turkmen*, 789 F.3d at 233 (quoting *Iqbal*, 556 U.S. at 678).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007), *rev'd*, 556 U.S. 662 (2009)).

Where, as here, a complaint is filed *pro se*, it "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).  "This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (alteration in original) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Consequently, when parties seek dismissal of *pro se* complaints, "courts 'apply[ ] a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel.'" *Thompson v. Pallito*, 949 F. Supp. 2d 558, 571 (D. Vt. 2013) (alteration in original) (quoting *Lerman v. Bd. of Elections in the City of N.Y.*, 232 F.3d 135, 140 (2d Cir. 2000)).  Still, a complaint filed by a *pro se* plaintiff "must state a plausible claim for relief." *Hogan*, 738 F.3d at 515.

4

## II.     Federal Tort Claims Act

On the first page of the Complaint, Young indicates that he is bringing suit pursuant to the Federal Tort Claims Act (FTCA).  (Doc. 4 at 1.)  Defendants assert that "[t]here is . . . no cause of action against a state or state employees created by the FTCA." (Doc. 5 at 1.)  I agree.

The FTCA "allows plaintiffs to seek damages from the United States for certain torts committed by federal employees."  *Simmons v. Himmelreich*, 136 S. Ct. 1843, 1845 (2016) (citing 28 U.S.C. §§ 1346(b), 2674).  The statute reads as follows:

> [D]istrict courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

Here, Young is seeking monetary damages against state employees, and thus has no claim under the FTCA.  *See Simmons*, 136 S. Ct. at 1845 (stating FTCA claims may be brought against "federal employees"); *see also* 28 U.S.C. § 2671 (defining "[e]mployee of the government" to include "officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty . . . [,] persons acting on behalf of a federal agency in an official capacity, . . . [and] any officer or employee of Federal public

defender organization").  Accordingly, I recommend that any claims against Defendants brought pursuant to the FTCA be DISMISSED.

## III.    Section 1983

Applying a liberal construction to Young's Complaint, Young may be asserting claims under 42 U.S.C. § 1983.  *See Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))).

Under 42 U.S.C. § 1983, a claimant may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'"  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983).  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)).  "A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges."  *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Thompson*, 949 F. Supp. 2d at 569

(quoting *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)).  I proceed to analyze Young's claims as brought under § 1983.

## IV.   Eleventh Amendment

Defendants argue that the Eleventh Amendment protects them from any claims brought pursuant to § 1983.  (Doc. 5 at 3.)  The Eleventh Amendment provides immunity to states and state agencies "from suits brought by private parties in federal court."  *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)).  That immunity extends to government entities such as "'state agents and state instrumentalities' that are, effectively, arms of a state."  *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).  As a state correctional facility, NWSCF meets this definition.  *See Gonzalez v. N.Y. State Dep't of Corr. Servs. Fishkill Corr. Facility*, 122 F. Supp. 2d 335, 340 (N.D.N.Y. 2000) (concluding that a correctional facility is an "arm[] of the state").

The doctrine of sovereign immunity under the Eleventh Amendment also "protects state officials sued for damages in their official capacity."  *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted).

The Eleventh Amendment does not bar claims against state officials in their individual capacities. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). Additionally, there are two exceptions to Eleventh Amendment immunity: a state can waive its immunity to suit, or Congress can abrogate a state's immunity by statute. *Will*, 491 U.S. at 66.

Here, the Vermont Department of Corrections (DOC) and NWSCF are immune to suit. The DOC is a state agency, and NWSCF is an arm of the state as a correctional facility. Moreover, the medical staff and officers listed in the Complaint's caption are state officials, and thus immune to suit for money damages in their official capacities.

Lastly, neither exception to sovereign immunity applies. The State of Vermont has not waived its immunity, *see Thompson*, 949 F. Supp. 2d at 572 ("Vermont has not waived its sovereign immunity under § 1983." (citing Vt. Stat. Ann. tit 12, § 5601(g))), and Congress has not abrogated Vermont's immunity by statute. *See Muhammad v. Gold*, No. 1:05–CV–146, 2007 WL 3088133, at *2 (D. Vt. Oct. 23, 2007) ("There is no indication in 42 U.S.C. § 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities such as state sovereign immunity when it enacted § 1983."). Accordingly, to the extent Young seeks money damages against the DOC, NWSCF, and medical staff and officers in their official capacities, I recommend that the Court DISMISS those claims.

## V.    Persons Under § 1983

### A.    Medical Staff and Corrections Officers

Defendants argue that "[a]ny claims under § 1983 against 'Medical Staff,' Corrections Officers' in their official capacities must be dismissed, as they are not 'persons' for the purposes of § 1983."  (Doc. 5 at 4.)

"[N]either a State nor its officials acting in their official capacities are 'persons' under [42 U.S.C.] § 1983."  *Huminski v. Corsones*, 396 F.3d 53, 70 (2d Cir. 2005) (alterations in original) (quoting *Will*, 491 U.S. at 71).  Thus, "state officials cannot be sued in their official capacities for retrospective relief under section 1983," but they can be sued "in their official capacities for injunctive or other prospective relief."  *Id.* (citing *Will*, 491 U.S. at 71, 71 n.10).  I recommend that Young's claims for money damages against Medical Staff and Corrections Officers in their official capacities be DISMISSED on this ground as well.

### B.    NWSCF

Defendants next argue that NWSCF is not a "person" under § 1983 and thus cannot be held liable under the statute.  (Doc. 5 at 5.)  "A prison facility itself . . . is not a 'person' within the meaning of § 1983 and is therefore not amenable to suit under that section."  *Brady v. Chittenden Corr. Facility*, No. 5:12–CV–41, 2012 WL 5929950, at *3 (D. Vt. Oct. 18, 2012), *report and recommendation adopted*, 2012 WL 5935702 (D. Vt. Nov. 27, 2012).  Accordingly, I recommend that the Court DISMISS any claims against NWSCF brought pursuant to § 1983.

VI.   **Prison Litigation Reform Act—Physical Injury**

Defendants assert that Young's claim for money damages fails under the Prison

Litigation Reform Act (PLRA) because he has not alleged a physical injury.  (Doc. 5 at

5.)  The PLRA states, "[n]o Federal civil action may be brought by a prisoner confined in

a jail, prison, or other correctional facility, for mental or emotional injury suffered while

in custody without a prior showing of physical injury or the commission of a sexual act . .

. ."  42 U.S.C. § 1997e(e).  Under the PLRA, "'the injury must be more than *de minimis*,

but need not be significant.'"  *Leon v. Johnson*, 96 F. Supp. 2d 244, 248 (W.D.N.Y.

2000) (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

Here, Young does not allege any injury—physical, mental, or emotional.

Accordingly, to the extent that he seeks damages for mental or emotional injuries, that

claim is barred.  *See Toliver v. City of New York*, 530 F. App'x 90, 93 n.2 (2d Cir. 2013)

(summary order) ("[U]nder 42 U.S.C. § 1997e(e), a prisoner may not recover 'for mental

or emotional injury suffered while in custody without a prior showing of physical

injury.'").

VII.   **Constitutional Claims**

Defendants construe Young's Complaint as alleging a violation of his right to

adequate medical care under the Fourteenth Amendment.  To this I add a claim that he

was retaliated against for grieving his situation to officers "on the Housing Unit" (*see*

Doc. 4 at 4), and I address both claims below.

### A.   Medical Care

Young alleges that he "rec[ei]ved inadequate dental care while in prison."  (*Id.*)

He appears to be arguing that his care was inadequate because officers forgot him in his

cell, which affected his ability "to receive medical attention."  (*Id.* at 7.)  Defendants

assert that Young has failed to state a claim that his rights under the Fourteenth

Amendment were violated.  (Doc. 5 at 6.)

A pretrial detainee's claim of inadequate medical care is properly brought under

the Fourteenth Amendment's Due Process Clause.  *Caiozzo v. Koreman*, 581 F.3d 63, 68

(2d Cir. 2009).  Importantly, "[c]laims for deliberate indifference to a serious medical

condition or other serious threat to the health or safety of a person in custody should be

analyzed under the same standard irrespective of whether they are brought under the

Eighth or Fourteenth Amendment."  *Id.* at 72.  "To establish an unconstitutional denial of

medical care, a prisoner must prove 'deliberate indifference to [his] serious medical

needs.'"  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d. Cir. 1994) (alteration in original)

(quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  Specifically, "a prisoner must

allege two elements, one subjective and one objective.  First, the prisoner must allege that

the defendant acted with a subjectively 'sufficiently culpable state of mind.'  Second, he

must allege that the conduct was objectively 'harmful enough' or 'sufficiently serious' to

reach constitutional dimensions." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015)

(citation omitted) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8, 20 (1992)).

Dental care has been recognized as a form of medical care, where the care "'is one

of medical necessity and not one simply of desirability.'"  *See Petrazzoulo v. U.S.*

*Marshals Serv.*, 999 F. Supp.  401, 407 (W.D.N.Y. 1998) (quoting *Dean v. Coughlin*, 804

F.2d 207, 215 (2d Cir. 1986)); *see also Malsh v. Austin*, 901 F. Supp. 757, 761–63

(S.D.N.Y. 1995) (applying Eighth Amendment analysis to claim regarding dental

appointment).  Still, Young has failed to demonstrate that his "inadequate" dental care

violated his rights under the standards set forth above.  (*See* Doc. 4 at 4.)  For instance,

the Court is unable to infer any state of mind on the part of any Defendant.  Also, Young

has not set forth any allegations to suggest that the deprivation of care was "sufficiently

serious."  Young's allegation that his dental care was inadequate due to prison officials

forgetting him in his cell also does not give rise to a plausible constitutional claim.  (*See*

Doc. 4 at 4, 7.)  "[A] prisoner must demonstrate more than 'an inadvertent failure to

provide adequate medical care' by prison officials to successfully establish Eighth

Amendment liability."  *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (quoting

*Estelle*, 429 U.S. at 105).  In fact, the prisoner must show that the prison official knew

about and disregarded "'an excessive risk to inmate health or safety.'"  *Id.* (quoting

*Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).  Young fails to make that

showing here.

Accordingly, I recommend that the Court DISMISS Young's claim of inadequate

dental care under the Fourteenth Amendment's Due Process Clause.

### B.      Retaliation

Interpreting Young's Complaint liberally, it appears that Young may be alleging

that officials at NWSCF retaliated against him for grieving his situation to "officer[]s on

the Housing Unit."  (Doc. 4 at 4.)  He states that after he "[i]nformed the officer[]s on the

Housing Unit about [his] situation," the officials told him "that they 'forgot [he] was in the cell.' [He] ended up getting restrain[ed] and escorted to solitary confi[ne]ment." (*Id.*) It is unclear what Young's "situation" was specifically; it is also unclear whether the "restraint" and time in solitary confinement are alleged to have been in retaliation for Young's grievance. Regardless, I interpret Young's Complaint "to raise the strongest claims that it suggests," *Hogan*, 738 F.3d at 515, and I address the potential retaliation claim below.

"Courts properly approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). "[I]n order to survive a motion to dismiss a complaint, a plaintiff asserting First Amendment retaliation claims must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Id.* (quoting *Dawes*, 239 F.3d at 492).

In *Goord*, the Second Circuit noted that filing a grievance is a protected act and found that the prisoner in that case, who filed multiple grievances, satisfied the first prong of the retaliation test. *Id.* at 349–51, 352–53. Based on Young's allegation that he submitted many letters through the prison grievance process, he too has satisfied the first

part of the test for retaliation claims.  (*See* Doc. 4 at 4 ("I wrote several letters exhausting

my administrative remedies . . . .").)

However, the Complaint is utterly devoid of other allegations that would permit

the Court to infer an adverse action or causal connection under the second and third

prongs of the test articulated above.  Accordingly, to the extent Young claims that he was

retaliated against for his prison grievance, I recommend that the Court DISMISS that

claim.

## VIII.  Leave to Amend

The Court must consider whether to grant Young leave to amend his Complaint.

"A *pro se* complaint 'should not [be] dismiss[ed] without [the court] granting leave to

amend at least once when a liberal reading of the complaint gives any indication that a

valid claim might be stated.'"  *Grullon*, 720 F.3d at 139 (first and second alterations in

original) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).  "Leave to

amend may properly be denied if the amendment would be 'futil[e],'" *id.* at 140

(alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)), or if the

plaintiff has "'repeated[ly] fail[ed] to cure deficiencies'" through prior amendments,

*Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman*, 371 U.S.

at 182).

As a *pro se* litigant, Young should be given the opportunity to amend his

Complaint.  Any amended filing should be titled "Amended Complaint" and should

contain all claims against all parties, as it will supersede the original Complaint in all

respects.  The Court should require that an Amended Complaint, if any, be filed within 30

days of its ruling on this Report and Recommendation.  Young's failure to amend his

Complaint should result in dismissal of this case with prejudice.

## IX.    Unidentified Defendants

Young lists unidentified "Medical Staff" and "Correction Officer[]s" as

Defendants in the Complaint's caption.  (Doc. 4 at 1.)  Should the recommendation in

Part VIII be adopted—and leave to amend granted—I also recommend that the Court

require Young to identify these individuals by name or list them as "Doe Defendants."

*See Carter v. Revine*, CIVIL ACTION NO.: 3:14-cv-1553 (VLB), 2015 WL 5842452, at

*7 (D. Conn. Oct. 6, 2015) ("The complaint references other unidentified and identified

individuals who were not named in the caption . . . .  If Carter would like to sue these

defendants, he should submit an amended complaint naming these defendants in the

caption.  To the extent that he does not know their names, he should identify them as Doe

Defendants.").

<u>Conclusion</u>

For the reasons stated above, I recommend that the Court GRANT Defendants'

Motion to Dismiss (Doc. 5).  I further recommend that, if this Report and

Recommendation is adopted by the Court, Young be allowed 30 days to file an amended

complaint.  Failure to file an amended complaint within that time frame should result in

the dismissal of Young's claims with prejudice.

Dated at Burlington, in the District of Vermont, this 6th of October, 2016.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).